Argued and submitted June 30, 1989, affirmed May 16, reconsideration denied July 11, petition for review denied July 31, 1990 (310 Or 205)

# STATE OF OREGON,
*Respondent,*

*v.*

# ROWLEY ALEXANDER SHEARER, JR.,
*Appellant.*

## (87-1660; CA A49112)

792 P2d 1215

J. Bradford Shiley, Portland, argued the cause for

appellant. With him on the brief was Des Connall and Dan Lorenz, P.C., Portland.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

**DEITS, J.**

Defendant appeals his convictions in a jury trial on two counts of sodomy in the first degree, ORS 163.405, and one count of sexual abuse in the first degree. ORS 163.425. He argues that the trial court erred when it excluded evidence of an inconsistent statement, allegedly made by the mother of the victim, regarding her opinion of the victim's truthfulness. He also contends that the trial court abused its discretion when, under OEC 403, it allowed the state to impeach defendant's expert by showing that, in another criminal case involving a different defendant, he testified that the defendant did not fit the profile of a sex abuser but that the defendant in that case later admitted to the acts at sentencing. We affirm.

At the time of trial, in May, 1988, the victim was 12. He testified that defendant, who is the victim's older stepbrother, had made him submit to oral and anal copulation from the time when the victim was three. When the victim was four, he told his mother about his stepbrother's behavior but no action was taken. When he was 11, he again complained to his mother that defendant was abusing him and that resulted in the criminal charges being brought.

The state called the victim's mother as a witness. On cross-examination by defendant's counsel, she testified:

"Q [BY DEFENDANT'S COUNSEL]: You never made the statement to [Officer Frank of the Oregon State Police] that you weren't sure [the victim] was telling the truth?

"A Not to him.

"Q Who did you make that statement to?

"A Marion Ford.

"Q With regard to Marion Ford, didn't you have a conversation with her on — wasn't your statement to her a little bit stronger than that?

"A Yes.

"Q What did you say to Marion Ford?

"[BY PROSECUTOR]: Objection. Hearsay.

"[THE COURT]: Sustained."

Counsel made further attempts to elicit from the victim's

mother that she had told Marion Ford that the victim was a "pathological liar." The state objected, and the trial court sustained the objections.[1] Defense counsel then asked the victim's mother:

"Q [BY DEFENSE COUNSEL]: What are your thoughts about [the victim's] truthfulness and veracity?

"A I believe he is telling the truth.

"Q You have never said to the contrary?

"[BY PROSECUTOR]: Objection. Irrelevant.

"[THE COURT]: Sustained."

In its case-in-chief, defendant called Ford as a witness to ask her if the victim's mother had called the victim a "pathological liar." The state objected to Ford's testimony on the grounds that it was irrelevant and that defense counsel had not laid the proper foundation under OEC 613(2). The trial court sustained the state's objection, and defendant assigns that ruling as error.

■ Defendant contends that the court erred in refusing to permit him to impeach the victim's mother with her prior inconsistent statements about the victim's truthfulness.[2] Defendant argues that Ford would have testified that the mother had told her that the victim was a pathological liar, and that the statement to Ford is inconsistent with the mother's opinion that the victim was telling the truth. He contends that, under OEC 613(2), he was entitled to examine Ford concerning the alleged inconsistency.

OEC 613(2) states, in pertinent part, that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same * * *." The rule requires that there be a material variance between the prior inconsistent statement and the testimony of the witness at trial. *Rigelman v. Gilligan,* 265 Or 109, 121, 506 P2d 710 (1973).

---

[1] Defendant does not assign as error the trial court's limitation of his cross-examination.

[2] The trial court reasoned that Ford's testimony was excludable, because it concerned a collateral matter. Defendant has argued to the contrary on appeal. We do not need to address that issue, however, because we affirm the trial court on another ground.

The mother testified that, although she presently believed that the victim was telling the truth, she had, at an earlier time, expressed a belief to Ford that he was untruthful. Although she was not allowed to testify that she had described the victim as a "pathological liar," she acknowledged that she previously had expressed the view that the victim was untruthful. Accordingly, there was not a material variance between the testimony defendant sought to offer through Ford and the testimony that was received from the mother. Moreover, the trial judge is given a "fair range of discretion" in deciding whether a prior statement is inconsistent with testimony given at trial. *Rigelman v. Gilligan, supra,* 265 Or at 121. The trial court did not abuse that discretion here.

■■ Defendant's second assignment of error is that the trial court erred when it allowed the state to impeach defendant's expert witness, a clinical psychologist, by showing that, in another sex abuse case involving a different defendant, he gave an opinion that the defendant did not fit the psychological profile of a sex abuser, when, in fact, that defendant later admitted the acts.[3] The expert similarly testified that defendant here did not match the profile of a pedophile and did not have any serious sexual disorders.

Defendant argues that the trial court abused its discretion under OEC 403, because the prejudicial impact of the evidence substantially outweighs any probative value the evidence may have. OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

We have used three factors in determining whether the prejudicial impact of evidence outweighs its probative value: (1) the need for the evidence; (2) its persuasiveness; and (3) its

---

[3] The state called the court reporter to read the transcript of the proceedings at sentencing, specifically the part where the defendant had admitted to committing the acts for which he was convicted. Defendant argues on appeal that the testimony is "classic hearsay." That objection, however, was not made to the trial court and, accordingly, we will not address it for the first time on appeal. *See State v. Taylor,* 54 Or App 428, 431, 634 P2d 1381 (1981).

inflammatory effect on the jury. *State v. Pigg,* 87 Or App 625 627-28, 743 P2d 770 (1987).

Defendant relied heavily on the expert's opinion that he was not a sex abuser. That opinion, if unattacked, is highly persuasive. To that extent, then, there was a need for the state to present evidence to show that his opinion should not be given much weight. Because the jury had to weigh the expert's opinion in deciding whether defendant committed the crimes, the cross-examination of defendant's expert was probative of how much weight to give that opinion. Defendant claims that the evidence was unnecessary, because the expert had already admitted that his opinion was fallible. However, we are not persuaded that that should preclude the state from attacking the reliability of the expert's opinion.

Finally, defendant argues that the cross-examination was too prejudicial, because it suggested that every time an expert concludes that a person is not likely to be a sex abuser, the person inevitably is. We do not believe that the evidence unduly suggested that defendant was guilty simply because the other accused was found guilty. We hold that the trial court did not abuse its discretion in concluding that the probative value of the state's evidence was not substantially outweighed by its prejudicial effect.

Affirmed.

**NEWMAN, J.,** dissenting.

I agree that the court did not err when it limited defendant's cross-examination of the victim's mother. Defendant's counsel's initial question to her was: "What are your thoughts about [the victim's] truthfulness and veracity?" Defendant, of course, could cross-examine the mother in order to impeach the victim's credibility, OEC 608, and the mother could give her opinion of the victim's character for truthfulness. OEC 608(1)(a). Her answer, "I believe he is telling the truth," appears to refer to the truthfulness of the victim's allegations against defendant. She should not have been permitted to give her opinion about whether the victim had spoken truthfully on a particular occasion. *See State v. Isom,* 306 Or 587, 590, 761 P2d 524 (1988); *State v. Milbradt,* 305 Or 621, 629, 756 P2d 620 (1988). In *State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983), the court stated:

"We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth."

Defendant's counsel's next question was, "You've never said to the contrary?" Defendant assigns as error that the court sustained the prosecutor's objection to that question. The court could have understood that question to be an effort of defendant to pursue the mother's apparently inappropriate answer to the previous question and to find out whether she had ever given an opinion that the victim did not tell the truth in a specific instance. The court did not err.

I also concur in the majority's conclusion that the court correctly excluded testimony of Marian Ford about a statement that the mother made to her regarding the victim's truthfulness. The credibility of the mother's opinion testimony is a collateral matter. *See State v. Burdge,* 295 Or 1, 6 n 3, 664 P2d 1076 (1983); 3A Wigmore, *Evidence* § 1020 (1940). Defendant sought to examine Ford on that collateral matter. Defendant, accordingly, must take the mother's answer as she gave it on cross-examination and may not call Ford to contradict her. *See State v. Johnson,* 277 Or 45, 48, 559 P2d 496 (1977).

The majority is incorrect, however, when it holds that the court did not err when it permitted evidence, over defendant's OEC 403 objection, pertaining to testimony of Dr. McGovern in an earlier trial of another criminal defendant and to that defendant's subsequent admission of guilt at his presentence hearing. The state offered the evidence to impeach McGovern's opinion that defendant did not fit a certain sex abuser profile.

To determine whether unfair prejudice from evidence outweighs its probative value, a court must consider: (1) the need for the evidence; (2) its persuasiveness; and (3) its inflammatory effect. *State v. Pigg,* 87 Or App 625, 628, 743 P2d 770 (1987). As to need, the majority states that McGovern's opinion, "if unattacked, is highly persuasive," 101 Or App at 548, and that his opinion is not "infallible." 101 Or App at 548. Neither of those points strongly establishes a need for the evidence, because the state was free to impeach by other means. Moreover, the evidence is hardly persuasive; one misdiagnosis tells little about the overall validity of

McGovern's opinions. On the other hand, the testimony was highly inflammatory. It suggests that defendant is guilty *simply because* a defendant about whom McGovern had also given a favorable opinion in another sex crime case was guilty. 101 Or App at 548.

The court abused its discretion in admitting the evidence. It was not harmless error. I would reverse.